UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JENNIFER L. VAN DALSEN, | ) |
| Plaintiffs, | ) |
| v. | ) Cause No. 4:23-CV-015-PPS-JEM |
| TONY ROSWARSKI, *et al.*, | ) |
| Defendants. | ) |

## **OPINION AND ORDER**

Jennifer Van Dalsen filed a *pro se* complaint alleging deprivation of her civil rights, in violation of 42 U.S.C. § 1983, based on the failure of local law enforcement to investigate the death of her child. Defendants, Tony Roswarski, the Mayor of Lafayette; Patrick Flannelly, its former Chief of Police; Sheriff Bob Goldsmith, of the Tippecanoe County Sheriff's Office; and Carrie Costello, the County Coroner, have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. [DE 12; DE 15; *see* DE 13; DE 16; DE 17; DE 22; DE 23.] For the reasons explained in this order, Defendants' motions to dismiss will be granted, and the complaint will be dismissed. However, Van Dalsen will be given an opportunity to file an amended complaint.

### Background

Van Dalsen initiated this case by filing a *pro se* complaint form. [DE 1.] The crux of her § 1983 claim is that Defendants failed to conduct an impartial investigation into her child's death because her child was transgender. She brings her § 1983 claims against Defendants in their official capacities as local government officials. The individuals

named as defendants in the complaint are all high-ranking officials or former officials for the City of Lafayette (Roswarski, Flannelly) and Tippecanoe County (Goldsmith, Costello).

Van Dalsen claims these individuals allegedly failed to investigate the suspicious death of her child, Alexander Blake Van Dalsen, because he had previous mental health struggles and identified as transgender. *Id.* at 3. After responding to the family's home on February 9, 2021, Van Dalsen claims that certain unidentified officers, detectives, and the Deputy Coroner who responded to the scene "knew" that the circumstances of her son's death were "suspicious." But after identifying him at the scene, they allegedly "*changed* [the cause of] death to suicide without a proper investigation, simply because he had prior mental health struggles and was transgender." *Id.* at 4 (emphasis added). It's unclear whether there was an initial determination by the officers, detectives, and/or Deputy Coroner that the circumstances of death were suspicious, but Van Dalsen obviously disagrees with the result of their investigation. It's also unclear what role, if any, the named defendants played in the death investigation, or how their actions allegedly harmed Van Dalsen.

Van Dalsen further claims that she spent two years independently investigating the matter, incurring expenses to pay for body camera footage and police reports and lost wages due to missing time at work, and that she has been unable to properly grieve the death of her child. *Id.* As relief, she seeks an order requiring "better training for all police officers and all [d]eaths to be properly investigated," including by means of an

2

"outside agency review" if necessary, as well as $600,000 in monetary damages for pain and suffering, lost wages, and recovery of attorney fees and costs. *Id.* at 5. Van Dalsen further demands that all "documents/videos/pictures" from the underlying investigation be turned over to her "unedited." *Id.*

## Discussion

I begin with a brief discussion of the applicable standards governing my decision making. Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). To avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that the plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

I am further guided by the principle that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less

3

stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and internal citations omitted). Although I must give liberal construction to a *pro se* plaintiff's complaint, "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

Turning to the substance of the motions to dismiss, as noted above, all of the named defendants worked in supervisory capacities for government agencies in the City of Lafayette and Tippecanoe County. And they are all sued in their official capacities as local government officials. [DE 1 at 2–3.] None of them are alleged to have been directly involved in responding to Van Dalsen's residence or investigating her son's tragic death. Instead, all of Van Dalsen's factual claims relate to actions taken by the "officers, detectives and Deputy coroner" who responded to the scene. *Id.* at 4. There are simply no facts laying out what defendants Roswarski, Flannelly, Goldsmith, or Costello did with respect to the investigation at the heart of Van Dalsen's claims, let alone what their roles were in connection with the investigation.

For this reason, the complaint does not state a plausible claim for relief on its face, as against the named defendants. At a minimum, Van Dalsen must explain how these individuals (and/or others more directly involved in the investigation of her son's death) violated her legal rights. That requires laying out the facts that form the 'who, what, when, and where' of what she claims happened in conjunction with the investigation of her son's death. In short, the facts presently alleged are simply too

4

threadbare to piece together a coherent story that would entitle Van Dalsen to relief, so her complaint fails to state a claim.

Van Dalsen is proceeding *pro se* and has not yet amended her complaint. In light of the principle that leave to amend "should, as the rules require, be 'freely given,'" I will grant her an opportunity to amend her complaint. *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also* Fed. R. Civ. P. 15(a)(2). In this situation, the circuit has repeatedly held that leave to amend should be granted "[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Barry Aviation*, 377 F.3d at 687 (emphasis added); *see id.* at n.3 (collecting cases reversing denial of leave to file amended complaint).

That said, Defendants present several arguments for why Van Dalsen cannot state a plausible claim against them in their official capacities for deprivation of her constitutional rights. For starters, under § 1983, a plaintiff may not rely on "the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates." *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 614 (7th Cir. 2002) (citing *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)) ("It is well-established that a plaintiff only may bring a § 1983 claim against those individuals personally responsible for the constitutional deprivation."). It is necessary to allege "some personal involvement" in the alleged constitutional deprivation "essentially directing or consenting to the challenged conduct." *Id.* (citing *Chavez v. Ill. State Police*, 251 F.3d 612,

5

651 (7th Cir. 2001)). The complaint before me falls well short of that standard – in fact, the named defendants are never once mentioned in the recitation of facts forming the basis for Van Dalsen's § 1983 claim.

More fundamentally, Defendants assert that there is no constitutional right to a particular level of investigation by law enforcement. I tend to agree that the situation presented does not clearly invoke a violation of a clearly established statutory or constitutional right based on an allegedly deficient investigation into the circumstances of Van Dalsen's son' death, meaning she cannot state claim for money damages under § 1983. The statute provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). To state a claim, a plaintiff must allege violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *West v. Atkins*, 487 U.S. 42 (1988). In other words, I must determine whether Van Dalsen plausibly alleges that she has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). In making this evaluation, I am guided by the notion that "[r]ather than acting as a source of rights, § 1983 serves as a vehicle for "vindicating federal rights elsewhere conferred." *Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015) *(*quoting *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)).

A related principle is the doctrine of qualified immunity. State and local government officials are shielded from liability for money damages claims "for actions

taken while performing discretionary functions, unless their conduct violates *clearly established statutory or constitutional rights* of which a reasonable person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (emphasis added). The doctrine of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law. . . . If officers of reasonable competence could disagree on the issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To determine whether officials are entitled to qualified immunity, as Defendants assert here, I "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all," and if so, I will "proceed to determine whether that right was clearly established at the time of the alleged violation." *Doyle*, 305 F.3d 603, 616 (7th Cir. 2002) (citing *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)) ("[A]s the Supreme Court has noted, this methodology 'promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public.'"). A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Est. of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012).

My independent review of precedents involving factually analogous claims arising under § 1983 has not yielded any authority clearly establishing a parent's right to an investigation of the death of their child that meets their satisfaction. In response to the motions to dismiss, Van Dalsen has not identified any authorities clearly establishing a right that she asserts was violated by Defendants' conduct. In the broader context of law

enforcement investigations, the Supreme Court has observed that the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989). The Seventh Circuit has cited *DeShaney* for the principle that there is no "constitutional right to have the police investigate [a plaintiff's] case at all, still less to do so to his level of satisfaction." *Rossi*, 790 F.3d at 735 (holding that under *DeShaney*, "mere inactivity by police does not give rise to a constitutional claim . . . [T]he operative question is not whether [plaintiff's] case would have been better had the police conducted a worthy investigation, but whether their failure to do so limited his ability to obtain legal redress to such degree that it constituted a denial of judicial access").

Admittedly, *DeShaney* and *Rossi* are not mirror images of the situation here. *DeShaney* involved claims brought by a mother of a child who had been beaten by his father against social workers and local officials who received complaints about the abuse but did not remove the child from his father's custody. In *Rossi*, the plaintiff asserted his constitutional rights were violated by a detective with the Chicago Police Department, who sat on his hands and failed to do anything whatsoever to investigate his assault by an off-duty police officer. However, the court in *Rossi* applied case law evaluating constitutional claims based on "police cover-ups of varying orders of magnitude," including *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995). Based on this authority, *Rossi* held that the relevant inquiry was not whether the plaintiff's assault case would have

8

been stronger had police conducted a worthy investigation, but whether their investigatory failings actually limited his ability to obtain legal redress to a degree that it amounted to a denial of his constitutionally protected right to access the courts. 790 F.3d at 735 ("Whether a cover-up (or a clear failure to investigate) occurred is merely one, albeit important, factor in determining whether a denial of judicial access occurred; the plaintiff must also show that the police's actions harmed his ability to obtain appropriate relief."). *See also Thompson v. Boggs*, 33 F.3d 847 (7th Cir. 1994) (rejecting claim for denial of access to justice based on officer's failure to include details about use of force in police report, because "the facts known to [him] concerning the arrest were sufficient to enable him to promptly file the instant lawsuit").

      A "police cover-up" is in the same ballpark as the facts alleged on the face of Van Dalsen's complaint. *Vasquez* involved a civil action brought against off-duty police officers who apparently thought it would be a good idea to drunkenly fire off a gun at a Super Bowl party. Unfortunately (and predictably) tragedy ensued: a stray bullet hit a child in a neighboring home. An officer arrived on the scene, inspected the room where the shooting occurred, retrieved a bullet slug from under a table, and called fellow officers for backup. A conspiracy was evidently cooked up among the responding officers and the off-duty officers that were taking target practice – the responding officers would bury the leads and derail the investigation. Cicero police did not take any action in the case for several months. In the interim, the FBI, State Police, and Cook County State's Attorney's Office created a Task Force. The Task Force reached the

conclusion that three off-duty police officers were involved in firing the shots and charged them under the local code. The plaintiffs sued the officers who were aware of or took part in the backyard shooting, as well as the on-duty officers who were involved in the investigation and allegedly conspired with the former group of off-duty officers to cover up the shooting and derail the investigation. *See* 60 F.3d at 326–28.

Reviewing the dismissal of plaintiff's § 1983 claims at summary judgment, the Seventh Circuit explained that the First and Fourteenth Amendments protect an individual's right to "pursue legal redress for claims which have a reasonable basis in law and fact." *Id.* at 328. As a "corollary," this right protects individuals against "efforts by state actors to impede an individual's access to courts or administrative agencies . . . under 42 U.S.C. § 1983." *Id.* "[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged." *Id.* (citing *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783, 783 (7th Cir. 2005)).

Obviously, *Vasquez* is not a direct comparator to the facts of this case. But it does suggest that a theory of constitutional deprivation may be based on violation of Van Dalsen's right to judicial access. Still, the Seventh Circuit's holdings in *Vasquez* and *Rossi* indicate that any such claim is limited to a very narrow set of circumstances involving egregious failures in law enforcement investigations that amount to a complete denial of the plaintiff's right to judicial access. *See* 60 F.3d at 329. To the extent Van Dalsen can

plausibly allege (in tangible facts, not conclusions) that Defendants took actions beyond mere inactivity that concealed the truth about the circumstances of her son's death (*i.e.*, it was not a suicide), these authorities indicate that the truth must be subverted to a degree that amounts to a fundamental denial of judicial access.

Additionally, the Seventh Circuit has concluded that parents do not possess constitutionally protected liberty interests in their relationship with their children. *See Watts*, 414 F.3d at 786–91, *overruling Bell*, 746 F.2d at 1243–44. So, to the extent Van Dalsen wishes to proceed on this separate theory, there is no clearly established constitutional right supporting such a claim. In any case, I'll note that this separate theory appears facially inapplicable to the factual circumstances outlined in the complaint, since Van Dalsen does not claim that public officials had anything to do with the cause of her son's tragic death, as opposed to rendering an official finding of the cause of his death. *Accord Watts*, 414 F.3d at 783–85 (affirming dismissal of parents' constitutional tort claims based on "loss of the society and companionship of their son," arising from fatal shooting of son by police officer).

In sum, while I find the claims susceptible to dismissal for the foregoing reasons, at this point dismissal with prejudice would be premature. *See Barry Aviation*, 377 F.3d at 687. Accordingly, while the claims will be dismissed, the dismissal will be without prejudice.

**ACCORDINGLY:**

Defendants' motions to dismiss for failure to state a claim [DE 12; DE 15] are

**GRANTED**. Plaintiff Jennifer Van Dalsen is **ORDERED** to file an amended complaint on or before **December 18, 2023**, to the extent she reasonably believes that she can assert a claim in light of the deficiencies addressed in this order.

**SO ORDERED**.

ENTERED: November 15, 2023.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT