UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JENNIFER VAN DALSEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 4:23-CV-015-PPS-JEM |
| CARRIE COSTELLO, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

This case relates to the profoundly sad death of an individual named Alexander Van Dalsen. His mother, Jennifer Van Dalsen, filed a *pro se* complaint alleging deprivation of her civil rights, in violation of 42 U.S.C. § 1983, based on the failure of local law enforcement to investigate the death of her child. [DE 1.] I dismissed her initial complaint for failure to state a claim, and Van Dalsen has since filed her amended complaint. [DE 25; DE 26.] She now asserts claims against several new defendants who work for the Tippecanoe County Coroner, Tippecanoe County Sheriff's Office, and the Lafayette Police Department, who investigated her son's death and determined the manner of death was suicide rather than homicide. [DE 26.] The defendants have all moved to dismiss the amended complaint for failure to state a claim. [DE 37; DE 41; DE 43.]

For the reasons explained below, Van Dalsen fails to assert facts forming a plausible claim for violation of her constitutional rights. And if she did, the defendants would be entitled to qualified immunity on her claim, because any such right was not

clearly established at the time of the alleged violations. As explained below, because it appears Van Dalsen will be unable to address these problems with another round of pleading, further leave to amend would be futile and therefore the action will be dismissed with prejudice.

## Background

Van Dalsen's initial complaint asserted § 1983 claims against Tony Roswarski (Mayor of the City of Lafayette), Patrick Flannelly (Chief of Police of the Lafayette Police Department), Robert Goldsmith (Sheriff of Tippecanoe County), and Carrie Costello (Tippecanoe County Coroner), in their official capacities. [DE 1.] More specifically, she claimed that these four individuals failed to investigate the suspicious death of her son because he had previous mental health struggles and identified as transgender. *Id.* at 3. After responding to the family's home on February 9, 2021, Van Dalsen claimed that certain unidentified officers, detectives, and the Deputy Coroner who responded to the scene "knew" that the circumstances of her son's death were "suspicious." But after identifying him at the scene, they allegedly "changed [the cause of] death to suicide without a proper investigation, simply because he had prior mental health struggles and was transgender."[1] *Id.* at 4 (emphasis added).

---

[1] As a result, Ms. Van Dalsen claimed that she spent two years independently investigating the matter, incurring expenses to pay for body camera footage and police reports and lost wages due to missing time at work, and that she has been unable to properly grieve the death of her child. [DE 1 at 4.] As relief, she requested an order requiring "better training for all police officers and all [d]eaths to be properly investigated," including by means of an "outside agency review" if necessary, as well as $600,000 in monetary damages for pain and suffering, lost wages, and recovery of attorney fees and costs. *Id.* at 5. Van Dalsen further demanded that all "documents/videos/pictures" from the underlying investigation be turned over to her "unedited." *Id.*

2

I noted that Van Dalsen failed to allege any facts tying Roswarski, Flannelly, Goldsmith, or Costello to the investigation at the heart of her claims. [DE 25 at 4.] While these individuals were all alleged to have played supervisory roles for the government agencies in question, that fact alone cannot support liability under 42 U.S.C. § 1983; and the complaint clearly omitted critical details about what they (or others more directly involved in the investigation) had done to violate Van Dalsen's rights. *Id.* The Federal Rules provide that leave to amend should be "freely given," and it was not "*certain from the face of the complaint that any amendment would be futile or otherwise unwarranted,*" so I granted Van Dalsen an opportunity to amend her complaint. *See* Fed. R. Civ. P. 15(a)(2); *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). I did so, however, while noting the significant challenges Van Dalsen would need to address in re-pleading her § 1983 claims – namely, how any of the defendants violated her rights secured by the Constitution and laws of the United States; and if so, how such a right was "clearly established," such that the defendants could be held liable for money damages under the doctrine of qualified immunity. [DE 25 at 5–11.]

In her amended complaint [DE 26], Van Dalsen has dropped Roswarski, Flannelly, and Goldsmith as defendants. In addition to Coroner Costello, she names ten new individual defendants. These new individuals are: Megan Keafer, Jeffrey Webb, and Jeffrey Tislow (officers and detectives with the Tippecanoe County Sheriff's Office); Evan Ledman (a Deputy Coroner with the Tippecanoe County Coroner's Office);

3

Natalie Lovett, Bryan Landis, Heath Provo, Jacob Daubenmeier, and Daniel Long (officers, detectives, and a lieutenant in the Lafayette Police Department); and finally, she names Dr. Darin L. Wolfe (a physician who does not appear to be affiliated with any governmental agency). It is not clear from the amended complaint whether all of the defendants are being sued in their official capacities or individual capacities. *Id*. What's more, the amended complaint does not provide a cohesive distillation of what took place, in what order, and who was involved in each phase of the investigation. But understanding that documents filed *pro se* are to be construed liberally, I have done my best below to piece together the events described in the amended complaint.

On February 2, 2021, Van Dalsen claims she reported her son Alex missing and officers of the Tippecanoe Sheriff's Department responded a few hours later. Defendants allegedly failed to issue a "Silver Alert" (which she claims Deputy Keafer could have initiated, but did not), leading to a delay in locating Alex's body, which was eventually located a week later, on February 9. [DE 26 at 1–2.] Van Dalsen acknowledges that after an investigation, the manner of death was officially ruled a suicide, based on the location of the weapon and "findings on Alex's phone." *Id.* at 8. But she claims that the "relevant factors were not thoroughly evaluated," and thus takes issue with various steps the defendants did or did not take in the investigation.

Initially, she claims that upon responding to the 911 call, Deputy Webb "had quite the attitude about having to be there," and suggested that Van Dalsen's report of a missing person was similar to a wellness check that had occurred a year earlier. *Id.* at

4

2–3. In Van Dalsen's view, Deputy Webb was dismissive of her concerns because of a prior encounter Deputy Webb had with her and her son. *Id.* at 3. She further claims that after Lafayette police got involved, Detective Lovett appeared on the scene but did not make contact with Alex's friends and family or note "any type of investigation on behalf of LPD" in her investigation report. *Id.* at 5. Although Van Dalsen claims there was evidence of vehicles that were stuck in the snow near where Alex's body was found, the officers who responded to the scene did not collect evidence such as foot prints and tire tracks, or otherwise canvas the area. They did attempt to recover a shell casing, but were unable to "recover one from the area." *Id.* at 4.

      Van Dalsen also makes mention of body-worn camera footage from the scene where Alex's body was recovered. [DE 26 at 4.] Officer Provo's camera shows three individuals going toward the trail where Alex was found deceased, and the officer asked them where they were going; but he did not follow up to ask if they knew anything about Alex's body. Officer Daubenmeier can allegedly be overheard on tape providing his opinion on what had happened. He speculated that "[t]hey placed him here, he was killed somewhere else, that is my guess." Officer Landis is also allegedly overheard agreeing with him. *Id.* Officer Daubenmeier can then be overheard telling another officer that this is a homicide. *Id.*

      Van Dalsen further claims that it took several days for Detective Tislow to get assigned to the case, and that Detective Tislow conducted a search on Alex's cell phone. However, she takes issue with the sufficiency of the search, as she claims it was

conducted only on the period Alex was missing, not on the critical period leading up to the point he went missing.[DE 26 at 3.]

The complaint proceeds to assert that Lafayette Police Department officers failed to follow a policy pertaining to investigation of "suspicious death[s]," under which such deaths are considered a homicide until a reasonable determination is made otherwise and the detective division is so notified. *Id.* Officers allegedly located a 9mm handgun under Alex's body at the scene, but Van Dalsen claims "no testing was done on it" to determine if it had been recently fired or to collect other forensic evidence. *Id.* She also asserts that unnamed officers transported Alex's body in the back of a department-issued pickup truck, and that in the process evidence "could have been" lost. *Id.*

The balance of the amended complaint targets alleged failings on the part of the County Coroner's office. Van Dalsen asserts that Deputy Coroner Ledman made findings in a "narrative" that were inconsistent with a later autopsy, and that while his notes state that he would follow up with Alex's therapist, there is no evidence this was ever done. [DE 26 at 5.] As for Coroner Costello, the complaint baldly asserts that she "would have agreed to the lack of [a] complete autopsy," and attempts to pin various alleged failures on the part of Deputy Coroner Ledman on his supervisor by dint of her leadership position. *Id.* at 8. Finally, Van Dalsen has named another medical professional, pathologist Darin Wolfe MD, as a defendant. The sole mention of Wolfe is that he "would have agreed to the lack of [a] complete autopsy." *Id.* It appears that Wolfe has no professional affiliation with either Tippecanoe County or the City of

6

Lafayette; it's entirely unclear what relationship he had (if any) with Van Dalsen, her son, or the investigators on Alex's case.

As relief, Van Dalsen has dropped her request for an injunction and simply seeks $3 million in damages for lost wages, expenses of her independent investigation into her son's death, and related emotional stress and trauma. [DE 26 at 10.]

## Discussion

I begin with a brief discussion of the applicable standards governing my decision making. Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(1), 12(b)(6). To avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has explained that the plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

7

I am further guided by the principle that a document "filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and internal citations omitted). Although I must give liberal construction to a *pro se* plaintiff's complaint, "it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

Van Dalsen asserts her claims under 42 U.S.C. § 1983, which codifies a cause of action for deprivation of constitutional rights "under color of state law" committed by a "person."[2] Courts have limited the scope of actions arising under § 1983 in various ways. Defendants assert that the amended complaint fails to allege a deprivation of Van Dalsen's rights, and that it fails to allege various defendants' personal involvement in the alleged deprivation of her rights; and that even if the amended complaint did meet these hurdles, they are entitled to dismissal of the claims under the doctrine of qualified immunity.

Initially, the statute provides a cause of action to redress the violation of federally secured rights by a person acting under color of state law. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004). In parsing such claims, I am guided by the bedrock principle that "[r]ather than acting as a *source* of rights, § 1983 serves as a *vehicle* for

---

[2] As noted above, there is no suggestion in the complaint that Dr. Wolfe took any actions "under color of state law," such that he may be liable under 42 U.S.C. § 1983. In any case, Van Dalsen's claim against Dr. Wolfe would fail for the independent reasons addressed below.

8

'vindicating federal rights elsewhere conferred.'" *Rossi v. City of Chicago*, 790 F.3d 729, 734 (7th Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)). To state a claim, a plaintiff must allege a violation of rights secured by the Constitution and laws of the United States, and must show that a person acting under color of state law committed the alleged deprivation. *See generally West v. Atkins*, 487 U.S. 42 (1988). In other words, at the very first step of the analysis, I must determine whether Van Dalsen plausibly alleges that she has been deprived of a right secured by the Constitution or laws of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

I am deeply sympathetic to Ms. Van Dalsen's loss. But even assuming as true that the named defendants were sloppy in how they conducted the investigation and autopsy that resulted in ruling Alex's death a suicide rather than a homicide, there is simply no basis to conclude that such conduct runs afoul of her constitutional rights. This is not a case seeking vindication of Alex Van Dalsen's rights – his estate is not a party to the action. And as with the first round of briefing, Ms. Van Dalsen has failed to present any authority suggesting that a right *she* possesses was plausibly violated based on the circumstances alleged. For this reason, her claims are doomed to fail.

The Supreme Court has observed that the Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 196 (1989). The Seventh Circuit has cited *DeShaney* for the principle that there is no

9

"constitutional right to have the police investigate [a plaintiff's] case at all, still less to do so to his level of satisfaction." *Rossi*, 790 F.3d at 735 (under *DeShaney*, "mere inactivity by police does not give rise to a constitutional claim," and "the operative question is not whether [plaintiff's] case would have been better had the police conducted a worthy investigation, but whether their failure to do so limited his ability to obtain legal redress to such degree that it constituted a denial of judicial access").

At a high level of generality, the Supreme Court has acknowledged that the First and Fourteenth Amendments protect "the right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact." *Vasquez v. Hernandez*, 60 F.3d 325, 328 (7th Cir. 1995) (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)). As a corollary, where law enforcement conducts a "cover-up" or "clear failure to investigate," such conduct may so limit an individual's ability to obtain legal redress that it amounts to a denial of "the right to court access." *Rossi*, 790 F.3d at 734–35. *See also Vasquez*, 60 F.3d at 328 ("[W]hen police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged."). *Vasquez* and *Rossi* reflect that only a very narrow set of circumstances involving egregious failures in law enforcement investigations that amount to a complete denial of a plaintiff's right to judicial access may support a claim for deprivation of rights under § 1983. And, of course, neither of these cases involved claims made directly by *parents*, based on deficient investigations involving their kin.

10

Accordingly, these authorities simply cannot be read to support a claim for deprivation of Ms. Van Dalsen's rights, as opposed (if at all) to those of her decedent son, who was the subject of the investigation.[3]

Given the opportunity to amend her complaint to provide additional facts potentially supporting a plausible theory of constitutional injury, Van Dalsen falls far short. Read in a favorable light, her amended complaint contains allegations that various officers and the Deputy Coroner may have cut corners or were undisciplined in their approach. But such claims suggest negligence, not intentional wrongdoing calculated to deny Van Dalsen the truth about what happened to her son.

In response, Van Dalsen asserts that "Alex and his family" possess "a right to the same level of investigation that a non-transgender person with no previous mental health struggles receives." [DE 39 at 5.] This really speaks past the salient point. What matters is whether Ms. Van Dalsen can plausibly assert that the named defendants have violated *her* rights. The complaint makes little mention of any animus the individuals involved in the investigation had toward her or her son based on his transgender identity, and mere conclusions do not make out a colorable basis to infer that anything these individuals did was motivated by animus against transgender persons. Moreover,

---

[3] For completeness, I note that the circuit has tossed out due process claims brought by parents based on a purported right to associate with their decedent child. *Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). In *Russ*, a college student was shot and killed by a Chicago police officer. The Seventh Circuit affirmed dismissal of his parents' § 1983 claims based on an asserted due process right to "the society and companionship of their son," holding that "[u]nder any standard, finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Id.* at 789–90. There is no indication that the underlying circumstances involved state action directed at interfering with Van Dalsen's relationship with her son.

11

Van Dalsen fails to contend whatsoever with the foregoing authorities. As discussed, they reflect that the right she appears to assert here—the right to have state officials conduct an investigation into her son's death more to her liking—is not protected by the Constitution. And to the extent it was, there is no reason to think that she, as a third party not directly harmed by the alleged failings in her son's death investigation, may assert it in her personal capacity.

For the foregoing reasons, I find that the amended complaint fails to state facts that make out a plausible violation of Van Dalsen's rights secured by federal law or the Constitution, as required to state a claim under 42 U.S.C. § 1983. Even if I were persuaded that she could identify a constitutionally protected right or interest, and assuming that there were facts in the complaint suggesting that the defendants violated it under the circumstances described in the amended complaint, there is no question that such a constitutional right or interest was not clearly established at the time of the defendants' alleged violations.[4] For this additional reason, the defendants are immune from suit.

Van Dalsen was given an opportunity to amend her complaint. While she provided additional details about the circumstances surrounding the investigation of her son's death, given the complaint's core deficiencies, I have no doubt that any further

---

[4] Under the doctrine of qualified immunity, state and local government officials are shielded from liability for money damages claims "for actions taken while performing discretionary functions, unless their conduct violates *clearly established statutory or constitutional rights* of which a reasonable person would have known." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1022 (7th Cir. 2000) (emphasis added). A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Est. of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012).

amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (district court may deny leave to amend when amendment would be futile); *Arazie v. Mullane*, 2 F.3d 1456, 1464 (7th Cir. 1993) (court need not accept amended complaint where it is apparent that it fails to cure defects identified in original complaint). The dismissal will therefore be with prejudice. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (noting Rule 15 requires "that leave to amend be *granted at least once* when there is a *potentially curable* problem with the complaint or other pleading" (emphasis added)).

**ACCORDINGLY:**

For the reasons explained in this order, the motions to dismiss [DE 37; DE 41; DE 43] are **GRANTED**, and the amended complaint [DE 26] is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. The Clerk is **DIRECTED** to close the case.

**SO ORDERED**.

ENTERED: July 8, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT